**SIGNED this 1st day of February, 2019**

_____
Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

_____

### IN THE UNITED STATES BANKRUPTCY COURT FOR
### THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re: ) | |
| ) | |
| **Letitia Edwina Smith** ) | No. 1:18-bk-13703-SDR |
| ) | Chapter 13 |
| ) | |
| Debtor ) | |

### MEMORANDUM

**I.    Introduction**

This case came to be heard upon the objection to confirmation filed by creditor Habitat for Humanity of Cleveland, Inc., ("Habitat") and creditor's motion to lift automatic stay. (Doc Nos. 26, 30).[1] Letitia Smith ("the Debtor") has filed a response objecting to Habitat's motion for relief from stay. (Doc. No. 33). Following an evidentiary hearing on November 8, 2018, both parties have filed supplemental briefs. (Doc. Nos. 41, 43). At the hearing the Court confirmed with the

---

[1] All docket references are to this case unless otherwise indicated.

parties which documents already filed in the case the Court would rely on in reaching its decision. After reviewing the proof of claim, the Court met with counsel for Habitat and the Debtor to outline its preliminary view of the case and requested that Habitat amend its claim to provide the information required by Rule 3001(c)(1) and (2)(A)-(C) of the Federal Rules of Bankruptcy Procedure, which was not included in the original claim. Habitat filed an amended claim on December 28, 2018. (Claim No. 5-3). On January 2, 2019, Habitat filed a Miscellaneous Motion to Supplement the Record. (Doc. No. 48). This motion provided additional allegations regarding changes to the Debtor's employment that occurred after the November hearing.

In this case, the Debtor's second filing pending before the Court within one year, Ms. Smith failed to seek an extension of the automatic stay under 11 U.S.C. § 362(c)(3) within the first 30 days. Therefore, the presumption that the current case was an abusive filing has not been rebutted. 11 U.S.C. § 362(c)(3)(C). Habitat has filed a motion for relief in which it contends that there is no stay in effect. (Doc. No. 30, at p. 2). The Debtor counters that the only stay that terminated is with respect to the Debtor, not the Debtor's residence, which is property of the estate under section 541(a). (Doc. No. 33, at p. 2). Courts are divided on the extent of the stay termination under section 362(c), and the Sixth Circuit has not taken a position on the issue. The extent to which the stay terminated is the first question to be answered.

If the stay is in effect, the next issue is whether the plan meets the requirements for confirmation. Habitat holds two mortgages on the Debtor's home. The Debtor has proposed a plan in which Habitat would receive a maintenance payment for the first mortgage of $345 a month and $200 over 60 months to cure the arrearage on that obligation, pursuant to section 1325(a)(5). (Doc. No. 2). She lists the arrearage as $11,500. She makes no provision for payment of the second mortgage held by Habitat.

The parties stipulate that the debt owed to Habitat is secured solely by the Debtor's principal residence and the last payment due under the notes is not due until after the plan would be completed. Therefore, the debt may not be modified [section 1322(b)(2)] but defaults may be cured "within a reasonable time" and maintenance payments may continue to be paid [section 1322(b)(5)]. Habitat has objected to the plan on the basis that the Debtor's plan does not adequately protect its interest. Habitat has argued that (a) almost five years is not a "reasonable time" to cure the default on the first mortgage and (b) that the plan cannot be confirmed because it fails to address the second mortgage at all.

At the hearing and in its brief, Habitat also has called into question whether a plan that is in a state of presumed abuse can be confirmed as filed in good faith and whether this case has been filed in good faith as required by section 1325(a)(3). It also challenges the feasibility of the plan based on the Debtor's income and expenses.

For the reasons set forth below, Habitat's motion for relief is DENIED. Habitat's objections to the feasibility of the plan and the treatment of its secured claim are sustained, and the confirmation of the plan is DENIED. The Debtor shall have 10 days from the entry of the order denying confirmation to amend her plan or the case will be dismissed.

**II.    Jurisdiction**

The Court has subject matter jurisdiction over this bankruptcy case pursuant to 28 U.S.C. § 1334 and § 157(b)(2)(G) and (L). This case and all related proceedings have been referred to this Court for decision, pursuant to 28 U.S.C. § 157(a) and the Standing Order of United States District Court, Eastern District of Tennessee, entered July 18, 1984. Venue is proper based on 28 U.S.C. §§ 1408 and 1409.

Having considered the relevant portions in the record in the case including the evidence offered at the hearings and the arguments and briefs of counsel, the Court now makes its findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure as made applicable to contested matters by Rule 9014.

### III.     Findings of Fact

#### A. The 2017 Case

Ms. Smith first filed for relief under chapter 13 of the Bankruptcy Code ("the Code") on April 4, 2017, which was assigned Case No. 1:17-bk-11484-NWW ("2017 Case"). In her initial plan in the prior case, she proposed to pay Habitat a monthly maintenance payment of $355 and a monthly arrearage payment of $105. (2017 Case, Doc. No. 2, at p. 1). The estimated arrearage listed in her proposed plan was $6,104. *Id.*

Habitat stated in an amended claim that the Debtor owed $82,673.12, of which $9,533.08 was necessary to cure any default. (2017 Case, Claim No. 2-3). The amended proof of claim does not adequately explain what composed the arrearage. Its attached statement of account reflects that Habitat charged a $25 late fee each month from April 2016 to April 2017, totaling $325, and another page reflects attorney fees of $879.50. *Id.* at 4, 20. The monthly payment on the first mortgage appears to be $345, which included $196.47 in principal and interest and $148.53 in escrow. *Id.* at 19. A separate attached page shows an escrow accounting that reflects the payment of taxes, hazard insurance, and a home owner's association fee, totaling $1,028.78 for 2016. *Id.* at 21. The escrow account statement, which also includes a separate hazard insurance payment and a home owner's association fee for 2017, has a cumulative negative balance of $2,018.46 for the period of March 2, 2016 to February 27, 2017. *Id.* Assuming the payments of principal and interest were $196.47 per month, the payment arrearage for the 14-month period from March 2016 to April

2017 should have been approximately $2,750.58, not the $5,803.57 amount shown on the claim attachment. *Id.* at 19. Adding to the payment arrearage the escrow balance of $2,018.46, attorney fees of $879.50, and late fees of $325, the Court's calculation of the total arrearage is $5,973.54. The Court cannot tell what composes the difference between its calculation of $5,973.54 and the arrearage amount reflected in Habitat's proof of claim, $9,533.08, although most of it seems attributable to the difference in past due principal and interest numbers. *Id.* at 2.

The account history also shows an initial loan advance on September 15, 2011 as $62,122.81. *Id.* at 20. However, the promissory note that created the debt, also dated September 15, 2011, states the principal amount is $70,729.08. *Id.* at 5. No explanation is provided for this discrepancy.

### i.      *2017 Plan*

The Debtor filed an amended plan in the 2017 Case. (2017 Case, Doc. No. 34). In it, she adopted rather than challenged Habitat's arrearage amount. The amended plan provided for an estimated arrearage of $9,533 to be paid at the rate of $200 a month. *Id.* at 1-2. The plan also provided for a maintenance payment of $355 to be paid by the Trustee and an additional payment of $100 to be paid on a second deed of trust "until pre-petition arrears are satisfied." *Id.* Copies of a second note and its deed of trust were not attached to Habitat's claim filed in the 2017 Case. The amended plan was confirmed August 31, 2017. (2017 Case, Doc. No. 38).

### ii.     *Performance on the 2017 Plan*

The Debtor made payments for several months. The Debtor developed health problems that caused her to lose her job, and she stopped making payments in January of 2018. A motion to dismiss was filed June 1, 2018, which stated that payments had not been made from January to May. (2017 Case, Doc. No. 47). The 2017 Case was dismissed June 28, 2018, for nonpayment. The trustee's final report reflects that the Debtor paid $17,622.90 into the 2017 Case. (2017 Case,

Doc. No. 56, at p. 2). Of that, $5,387 was refunded to the Debtor and $12,235.90 was paid to creditors. *Id.* Of the sum paid to creditors, Habitat received $2,653.93 – 7.4 of the 14 payments of $355 that accrued during the 2017 Case – as maintenance payments and $1,026.53 on its arrearage. *Id.* The Debtor offered no proof related to what happened to the $5,387 refunded to her.

### B. The 2018 Case

On August 17, 2018, approximately six weeks after the dismissal, Ms. Smith filed this case for relief under chapter 13 ("2018 Case"). In the current case, Habitat filed a proof of claim for $88,199.84 and attached copies of both notes to its proof of claim. (Claim No. 5-1). Each note was secured by its own deed of trust. Now the arrearage initially claimed was $13,630.22. *Id.*

From April of 2017 to August of 2018, Habitat was owed 17 payments of $355 a month for $6,035.00. In that time, Habitat received $2,653.93 toward maintenance payments (2017 Case Doc. No. 56, at p. 2), creating an additional arrearage of $3,381.07. In the 2017 Case, Habitat also received $1,026.53 toward the arrearage of $9,533.08 (2017 Case Doc. No. 56, at p. 2), which should have been a credit to the arrearage. Based on that accrual and the credit, the Court calculates that the arrearage at the time of filing the 2018 case would be $11,887.62 ($9,533.08 + $3,381.07 – $1,026.53), without late fees or attorney fees. Because of the Court's concerns with the basis for the amounts listed in the first proof of claim, the Court provided Habitat with an opportunity to supplement its proof of claim with the required itemization in order to determine whether the case was feasible.

Habitat filed an amended proof of claim and attached the forms required by Rule 3001(c)(2)(C). (Claim No. 5-3). The claim attachment has a summary number for "Fees, costs due," which is $2,899.00, but has no itemization about what they are and when they were incurred. *Id.* at 25. It also states that the escrow deficiency for funds advanced is $2,873.47, but again there

6

is no detail to compare what is included and when it was advanced. *Id.* The attachment also refers the reader to "See attached." *Id.* The attachment referenced is a statement of account without the detail required by the official form from which the Court could see all the debits and credits and any additional charges to the account to explain the new arrearage number. *Id.* at 26-27. The statement of account does reflect payments made during the 2017 Case and adequate protection payments made after the 2018 Case was filed. The total amount of the amended claim is $82,390.54, but the arrearage amount is further increased to $14,089.95. *Id.* at 2. The attachment shows the payment amount for principal, interest, and escrow to be $345. *Id.* at 26. A handwritten note states that the current mortgage due for the "1st" is $58,389.88 and the "Silent 2nd" is $17,978.19, for a total of $76,368.07. *Id.* at 27.

The writings on which Habitat relies are two notes dated September 15, 2011. The same note and deed of trust previously attached to the proof of claim filed in the 2017 Case were again attached to the amended proof of claim in the current case. *Id.* at 5-18. The second note, for $23,970.92, is attached. *Id.* at 19. The deed of trust securing the second note is also attached. *Id.* at 20-24.

The second note has an unusual payment term. It requires a payment of 25% of the note balance every five years, but also provides that the payment would be paid by Habitat if there were no defaults in any note to Habitat. *Id.* at 19. Under the second note, the first payment was due on September 1, 2016, and was for $5,992.73. The amended claim adds in only $17,978.19 for the second note, but no itemization has been provided as to whether credit was given for the first payment. *Id.* at 25, 27. It appears it was. The difference in the amount claimed and the original principal balance is $5,992.92, approximately the amount of the first payment due under the second note. The next payment on the second note is due September 1, 2021.

7

Counsel for Habitat explained at the hearing in November that the second mortgage is for the value of the volunteer labor to build the house. If the first mortgage is paid, Habitat does not collect the costs for the labor. The language of the note provides for satisfaction of the debt in 25% increments if there is no default. *Id.* at 19. If there is a default under any note when a five-year payment is due, then the Debtor must make the payment and failure to do so allows Habitat to accelerate the note and begin accruing interest at the maximum legal rate. *Id.*

### C. Reasons for Second Filing and Evidence of Ability to Complete the Plan

At the confirmation hearing, the Debtor explained her defaults in the 2017 Case were a result of medical issues. She has cancer, and her illness caused problems for her at work. She lost her job and was then unable to make her plan payments.

From January to July of 2018 she could not find work. Shortly after her case was dismissed, she found a job through a temp agency that became permanent employment. Her child support had also resumed. She refiled for bankruptcy in August 2018 because she was afraid that she would lose her house. She believed that her new job at Bradley Rentals and the resumption of child support would allow her to make the payments in this case. Her Amended Schedules I and J indicated that she had disposable income of $1,441. (Doc. No. 32). She had proposed a plan payment of $1,058 a month, an amount well within her disposable income. (Doc. No. 2).

However, circumstances had changed by January. In response the Miscellaneous Motion to Supplement the Record, the Court denied the motion to include the additional exhibit on the basis that it was hearsay. The Court did grant the motion to the extent that Ms. Smith should update her employment status. At the January hearing, she admitted that she had lost the job at Bradley Rentals, but had taken on a babysitting job that paid $300 a week. She also testified that she had obtained a commitment from her parents to help her make her house payments while she continued

to receive chemotherapy treatments and search for a bone marrow donor, but she offered no proof of their financial ability to do so. The Court notes that despite the Debtor's job loss in early December, she has made some of her payments into the plan and all of her payments for December, allowing Habitat to receive an adequate protection payment of $1,900 in December.

## IV. Issues

The Court must now address the following issues:
- A. To what extent has the automatic stay been terminated under section 362(c)(3)?
- B. May the case continue to confirmation without the stay in effect as to the Debtor?
- C. May the current plan be confirmed?
    - i. Is the plan filed in good faith?
    - ii. Is the plan feasible?
    - iii. Does the plan meet the requirements of confirmation under sections 1322(b)(2) and (5) and 1325(a)(5)?
    - iv. Must the plan provide for a second mortgage that, by its terms, is forgiven if the default on a first mortgage is cured during the plan?

## V. Legal Analysis

### A. To what extent has the automatic stay been terminated under section 362(c)(3)?

Sections 362(c)(3) and (c)(4) were added to the Code in 2005 to "address the consequences of a debtor filing multiple, unsuccessful cases in a short period of time." *In re Wood*, 590 B.R. 120, 123-24 (Bankr. D. Md. 2018). "Courts have struggled to discern the meaning of this new subsection of [section] 362." *In re Jupiter*, 344 B.R. 754, 756–57 (Bankr. D.S.C. 2006) (citing *In re Paschal,* 337 B.R. 274, 277 (Bankr. E.D.N.C.2006); *In re Baldassaro,* 338 B.R. 178, 182 (Bankr. D.N.H. 2006); *In re Charles,* 332 B.R. 538, 541 (Bankr. S.D. Tex. 2005)). There is a "notable split in the case law, with courts unable to agree on the correct application of section 362(c)(3)," where "[t]he general disagreement among courts turns largely on what some believe to be ambiguous statutory language and a potential conflict with legislative purpose." *In re Wood*,

9

590 B.R. at 124. The *Wood* Court summarized the differing interpretations of section 362(c)(3) as follows:

> Courts have, for the most part, followed one of two approaches to implementing section 362(c)(3) of the Code. The majority approach adopts a plain meaning reading of the statute, interpreting the words "with respect to the debtor" to indicate a limited termination of the automatic stay. *See, e.g., Jumpp v. Chase Home Fin., LLC (In re Jumpp)*, 356 B.R. 789 (1st Cir. BAP 2006). Specifically, the majority approach holds that the stay terminates only as to the debtor and property of the debtor under section 362(c)(3). The minority approach views this result as an anomaly given the general legislative purpose underlying sections 362(c)(3) and (c)(4), namely to deter serial bankruptcy filings. *See, e.g.*, *Goodrich*, 587 B.R. [829,] 844 [(Bankr. D. Vt. 2018)]. Accordingly, the minority approach holds that the stay terminates in . . . all respects under section 362(c)(3). Finally, some courts endorse a third approach that terminates the stay only "as to the continuation of judicial, administrative or other proceedings commenced prior to the bankruptcy filing" involving property of the debtor or property of the estate. *See, e.g.*, *In re Bender*, 562 B.R. 578, 583 (Bankr. E.D.N.Y. 2016).

*In re Wood*, 590 B.R. at 124 (footnotes omitted). Ultimately, the *Wood* Court determined that, after review of the applicable case law and commentary, and its reading of the statute and its understanding of the statutory interpretation, it found "no significant reason to deviate from the majority approach" and concluded "the automatic stay of section 362(a) terminated under section 362(c)(3) only as to the [d]ebtor and property of the [d]ebtor." *Id.* at 125-26.

The Court acknowledges that the majority opinion may be shifting. The *Jumpp* case was recently abrogated by an opinion by the First Circuit Court of Appeals. *In re Smith*, 910 F.3d 576 (1st Cir. 2018). The First Circuit joined the other courts that have held that there is a complete termination of the stay if it is not extended. Nevertheless, the Court will follow cases holding that the termination is limited and the stay remains in effect as to property of the estate.

The line of cases "adopted by the majority of bankruptcy courts within the Sixth Circuit, holds that the termination of the automatic stay under [section] 362(c)(3) only applies to the debtor's property, and not property of the bankruptcy estate." *In re McKeal*, No. 14-62113, 2014 WL 6390712, at *2 (Bankr. N.D. Ohio Nov. 14, 2014)[2] (citing *In re Dowden,* 429 B.R. 894, 902–03 (Bankr. S.D. Ohio 2010); *In re Robinson,* 427 B.R. 412, 413–14 (Bankr. W.D. Mich. 2010); *In re Johnson,* 335 B.R. 805, 806 (Bankr. W.D. Tenn. 2006)). The Bankruptcy Court for the Western District of Tennessee has previously found in *In re Johnson* that

> When read in conjunction with subsection (1), . . . the plain language of § 362(c)(3)(A) dictates that the 30–day time limit only applies to "debts" or "property of the debtor" and not to "property of the estate." As a result, the automatic stay continues to protect "property of the estate" as long as it remains "property of the estate." . . . Clearly, all property defined by either § 541 or § 1306 as "property of the estate" remains "property of the estate" in chapter 13 cases in this district until the case is either dismissed or discharged or until the court orders otherwise.

335 B.R. at 806-07.

After reviewing the authorities, the Court adopts the position that the stay is not terminated as to property of the estate. The Court finds the language used in the statute supports the reasoning that "with reference to the debtor" limits the extent of the stay termination. The *Goodrich* case makes an appealing argument that the language does not carry out the legislative intention of deterring serial filers, but the Court finds that the reasoning of the majority relying on the actual language enacted is more persuasive. The Court finds that the language in subsection (c)(4) of section 362 regarding imposition of the stay demonstrates that Congress could clearly describe the complete stay imposed under subsection (a) without limitation. Its use of different language in

---

[2] Ultimately, the *McKeal* Court took "no position on the scope of the automatic stay after the thirty-day deadline from [section] 362(c)(3)." *In re McKeal*, No. 14-62113, 2014 WL 6390712, at *3, n.1 (Bankr. N.D. Ohio Nov. 14, 2014).

subsection (c)(3) supports a conclusion that less than the stay imposed in subsection (a) covering the debtor, his property, and the estate's property is terminated by the provision in subsection (c)(3). Here, this Court finds that the property of the estate of a debtor, who had a case pending within the prior year but did not seek an extension of the stay under section 362(c)(3), is still protected by the stay imposed by subsection (a). In this case, that property includes the Debtor's home. Accordingly, the Court holds that the stay is still in effect as to the Debtor's home.

### B. May the case continue to confirmation without the stay in effect as to the Debtor?

The Court finds that a plan may be confirmed without a stay in effect as to the Debtor because an effective stay is not a requirement for confirmation listed under section 1325(a). The Bankruptcy Appellate Panel for the Sixth Circuit determined in an unpublished opinion that the continuation of the stay was not a requirement for confirmation, stating that

> [c]ase law . . . has rejected the proposition that the absence of the stay constitutes a *per se* absence of the good faith or feasibility required by § 1325. All the cases that have addressed the question have stated that a Chapter 13 plan can be confirmed and carried through to discharge without the automatic stay in place.

*In re Dyer*, 489 B.R. 637 (B.A.P. 6th Cir. 2013), No. 12-8030, 2013 WL 987729, *5 (B.A.P. 6th Cir. March 14, 2013) (table opinion) (discussing *Shaw v. Aurgroup Fin. Credit Union*, 552 F.3d 447, 450 (6th Cir. 2009) ("[t]he bankruptcy court is required to confirm the plan so long as it satisfies the provisions of 11 U.S.C. § 1325(a)"); *In re Fleming*, 349 B.R. 444, 446-47 (Bankr. D.S.C. 2006) (finding the Code indicates the existence of a stay is not a prerequisite to confirmation under section 1325(a), and "the termination of the automatic stay does not necessarily deprive a debtor of the right to continue under Chapter 13, obtain confirmation of a plan, and ultimately obtain a discharge if the debtor complies with the terms of the plan"); *In re Murphy*, 346 B.R. 79, 83 (Bankr. S.D.N.Y. 2006) (finding that "[b]ecause termination of the stay under

[s]ection 362(c) is not the equivalent of termination of the [c]hapter 13 case, it is still possible for a debtor to confirm a [c]hapter 13 plan when the stay terminates early in the case under [s]ection 362")).

The Court extrapolates that if the existence of a stay is not required and its absence does not create a per se absence of good faith, then the Debtor may still make a showing that the plan was filed in good faith in support of confirmation.

### C. May the current plan be confirmed?

#### i. Is the plan filed in good faith?

The Sixth Circuit has held that "[t]he bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding [c]hapter 13 [rehabilitation]: a sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources." *Metro Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah)*, 836 F.2d 1030, 1033 (6th Cir. 1988). The Court looks to the "totality of the circumstances" to determine good faith. *Id.*

The Court finds that the plan was proposed in good faith. The Debtor has suffered medical problems. She has lost jobs but continues to seek work and make payments when she is working. The Court finds no lack of effort in this case, and a sincere intention to repay her obligations. In view of her recent success in making the payments despite these hardships, the Court finds that the Debtor has met her burden of good faith.

#### ii. Is the plan feasible?

The question of whether the Debtor will be able to meet her plan obligations in light of her recent job loss and the requirements for confirmation is a much closer question for the Court. The creditor has challenged whether the Debtor is employed and able to make all of the payments under

the plan. The Debtor has the burden of showing that she can meet the requirement of section 1325(a)(6).

The Debtor previously testified that she was employed full time as a receptionist, earning $480 a week. In addition, she receives $500 a month in child support. On October 24, 2018 she filed updated Schedules I and J. (Doc. No. 32). She was receiving $2,266.33 a month from her job, plus the child support of $500 and food stamps for an additional $250 a month. Her expenses are $1,220 for herself and her two teenage sons. Her disposable income was $1,441 from which she proposes to pay $246 a week or approximately $1,058 a month. She also proposed to include her tax refunds as part of her plan payments. However, the Debtor updated the Court in January that she had lost her job, and she now earns $300 a week babysitting. This is $180 a week less than her job with Bradley Rentals. She stated she would replace the shortfall with support from her parents. She is proposing to pay Habitat $345 a month as a maintenance payment and $200 a month as an arrearage payment. The only other secured payment is $360 for her car, but her disposable income is now below what she needs to make her payments without help from her parents. Her parents' ability to help has not been shown.

Even if she could make this payment, Habitat also argues that the amount the Debtor proposes does not meet the requirements of section 1322(b)(5) because it does not cure the default within a reasonable time. Further, the plan does not meet the requirements of section 1325(a)(5) because it does not address the second mortgage. Its counsel argued that, in order for the plan to comply with the anti-modification provisions of section 1322(b)(2), it should receive $355 per month on its first mortgage, $400 a month on its second, and a minimum of $370 a month for the arrearage. (Doc. No. 41, at p. 2). The Court finds no contractual basis for these payment demands, but there are other problems with the Debtor's payment proposal.

The Debtor may not modify the terms of the notes, but the payment term of the second note does not require a payment for almost three years and there is no evidence that it is in default. There is no dispute that the first note is in default, and that a substantial arrearage has accrued. The Debtor has proposed to make monthly payments of $200 toward the arrearage. Because the claimed arrearage is $14,089.95, the time needed to cure the arrearage would be more than 70 months, which exceeds the maximum plan length. The terms of the second note exacerbate the problem with curing the arrearage. Failure to cure the arrearage on the first note before September 15, 2021 will obligate the Debtor to make the five-year payment of $5,992.73 to Habitat under the second note. The plan fails to provide for payment due under the second note at all, which is a separate problem. Other courts that have considered Habitat's "silent seconds" have required the debtor to make some provision for the payment of the note under section 1325(a)(5) even if it is going to be forgiven. *In re Olsen*, 363 B.R. 908, 911 (8th Cir. BAP 2007) ("Although the debtors may cure the default on [n]ote 2 and return to the status quo ante, their plan must still provide for [n]ote 2."); *In re Simmons*, No. 04-51304, 2004 WL 2249498, at *2 (Bankr. M.D. N.C., Oct. 5, 2004) ("By proposing to cure the default on the [f]irst [n]ote, the [d]ebtor's [p]lan is proposing to cure the default of the [s]econd [n]ote.").

Therefore, even if the Debtor can make the plan payment, that amount is not enough to satisfy both what is required by the notes as maintenance payments and what the Code requires to cure the arrearage within 60 months. She has not shown that she can cure the arrearage within the term of her plan, much less before the next payment is due on the second note. The Court finds that the proposed plan is not confirmable. Because of the recent changes in the Debtor's employment and the changes in the Habitat's proof of claim, the Court will not dismiss the case

but will give the Debtor 10 days to amend to see if she can propose a plan that can meet the confirmation requirements.

Habitat has also filed a motion for relief from the automatic stay. Although the plan is not confirmable, the Court finds that the interest of Habitat is adequately protected by the value of the real estate, the existence of insurance on the property, and the payments that have been made to this creditor. Therefore, the Court will preliminarily deny its request for relief. The Court will set the motion for a final hearing.

The creditor also has raised the issue of whether using the entire plan period is a reasonable time in which to cure an arrearage. Because the Court has denied confirmation because the arrearage payment amortization exceeded 60 months and no provision was made for the second mortgage, the Court does not need to address this issue. The Court has previously called the parties' attention to *In re Ford*, 221 B.R. 749, 754 (Bankr. W.D. Tenn. 1998), the case upon which the Court would rely to make its determination as to whether the plan met the requirements of section 1322(b)(5). If the Debtor proposes an amended plan, she would be advised to review the *Ford* case to determine whether the new plan's proposal to cure the arrearage would be confirmed under the *Ford* factors.

### VI.    Conclusion

The Court finds that the stay imposed by section 362(a) has not terminated with respect to the Debtor's residence, which is property of the estate.

The Court denies the confirmation of the Debtor's plan. Although the Court finds that the plan was proposed in good faith, the Debtor has not carried her burden that she has enough income to complete her plan payments. The Debtor has not demonstrated that the arrearage payments to Habitat will cure the arrearage within the time proposed for the plan. She has not provided a

distribution for the second mortgage of Habitat in her plan even though that distribution may ultimately be unnecessary.

The Court denies Habitat's request for relief from the automatic stay preliminarily on the basis that its interest is adequately protected, but sets the motion for a final hearing on March 28, 2019 at 1:30 p.m.

A separate order will enter. The Court originally delivered this opinion orally on the record on January 10, 2019. Following the hearing the Court notified the parties that it would file the opinion in writing. This is the first time the Court has addressed the extent of the termination of the stay, and its ruling in a written form may be helpful to other attorneys who appear before this Court. In the course of preparing the opinion, the Court reviewed some of its prior calculations and made corrections. Those corrections led the Court to change its view of the Debtor's ability to make her proposed payments and that change is reflected in this opinion. To the extent that anything in this opinion differs from the one delivered orally on January 10, 2019, this opinion is controlling.

# # #